UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUSAN ELIAS,                          :
                                      :CIVIL ACTION NO. 3:15-CV-263
            Plaintiff,                :
                                      :(JUDGE CONABOY)
            v.                        :
                                      :
CAROLYN COLVIN,                       :
Acting Commissioner of                :
Social Security,                      :
                                      :
            Defendant.                :
                                      :

_____

**MEMORANDUM**

Here we consider Plaintiff's appeal of the Acting Commissioner's decision to discontinue Social Security Supplemental Income ("SSI") benefits for which Plaintiff was found eligible in 2007. (Doc. 11 at 2.) Plaintiff filed her appeal (Doc. 1) on February 6, 2015. She filed her supporting brief on May 26, 2015. (Doc. 11.) Defendant filed her opposition brief on June 26, 2015 (Doc. 12), and Plaintiff filed her reply brief on July 6, 2015 (Doc. 13). Therefore, this matter is fully briefed and ripe for disposition. For the reasons discussed below, we conclude remand is warranted.

**I. BACKGROUND**

**A.  *Factual and Procedural History***

At a hearing held on November 7, 2007, the ALJ found Plaintiff disabled for SSI purposes as of April 21, 2006. (Doc. 11 at 2.)

The ALJ determined that Plaintiff met Social Security listings 8.05 and 14.02 for "Lupus." (*Id.*)

On November 19, 2008, Plaintiff and her ex-husband established a trust as a result of a divorce settlement. (Doc. 12 at 3.)  The trust was titled "Irrevocable Special Needs Trust" ("Trust") which was set up for Plaintiff to receive her ex-husband's pension and still meet SSI income requirements. (*Id.*)  Plaintiff was the sole beneficiary, and her father, Aglae Elias, was named the trustee with her daughter, Dana Kubiak, named as the successor trustee. (*Id.*)  Upon Plaintiff's death, the Trust would distribute to the Department of Public Welfare the remaining principal and accumulated income in an amount equal to the medical assistance that the Pennsylvania Department of Public Welfare had paid on Plaintiff's behalf. (*Id.*)

Without objection from Plaintiff, Defendant describes the Trust as follows:

> The trust provided that Plaintiff was to receive a monthly sum from her ex-husband's New York Police Department Pension Plan.  The monthly sum would constitute the principal of the Trust.  The trustee was required to use the trust to maintain and support Plaintiff's health, safety, welfare, education, and treatment (when not otherwise provided by a public agency or government program).  The trustee was permitted to apply the income as he deemed necessary and appropriate for Plaintiff's special needs and comfort.  He could apply the principal only if specifically permitted by the court and if he notified the Pennsylvania Department of Public Welfare and the Social Security

> Administration.  The trust further provided
> that "no part of the principal or income
> shall be considered available to the
> Beneficiary."

(Doc. 12 at 4 (citing R. 100-02).)  Defendant notes that, according
to a letter from Plaintiff's attorney who drafted the trust
instrument, the monthly sum was $765.  (Doc. 12 at 4 n.1.)

In March 2011, the Social Security Administration field office
contacted Mr. Elias and determined that Plaintiff's access to the
Trust rendered it a countable resource.  (Doc. 12 at 5.)  Because
of this, the field office sent Plaintiff a letter on April 7, 2011,
stating that her income (i.e., her monthly pension and the value of
food and shelter) exceeded her SSI payments as of January 2009 and,
therefore, she was ineligible for benefits beginning January 2009.
(*Id.*)  Plaintiff testified that she did not receive a Social
Security check after April 2011.  (R. 332.)

Plaintiff filed a request for reconsideration on April 13,
2011.  (R. 15, 96-107.)  She attached a copy of the Trust
instrument, a letter dated November 26, 2008, indicating that a
copy of the Trust was provided to the Social Security
Administration, and a letter from the Commonwealth of Pennsylvania
dated January 6, 2009, stating that the Trust would not be
considered a countable resource based on a review of the Trust
document.  (R. 97-107.)

The field office sent Plaintiff a letter on April 29, 2011,
explaining that her SSI benefits had been overpaid in the amount of

$18,137 for the period of January 1, 2009, through April 1, 2011, because the agency had not been aware of all of her income, specifically her pension payments.  (R. 114.)

Plaintiff filed another request for reconsideration on May 24, 2011, which was denied with the explanation it was considered a countable resource because Plaintiff had direct access to the money.  (R. 96-107, 203.)  On January 19, 2012, Plaintiff filed a written request for a hearing.  (R. 210.)

On June 2, 2011, Plaintiff requested a waiver of overpayment stating that she was not at fault in causing the overpayment.  (R. 39, 173-80.)  Plaintiff submitted an affidavit from her father, the trustee, in which he attested that the only addition to the Trust was a monthly pension fund payment of approximately $590 (not including a deduction for federal withholding of $180 per month and an annual payment to the Trust of $2,000 pursuant to the Court of Approved Domestic Relations Order) and also stated that "[s]ince the Trust was established the only expenditures from the Trust have been consistent with the terms of the Trust Agreement."  (R. 51.) The field office denied the waiver request on July 13, 2012.

**B.   *Hearing Testimony***

A hearing was held before ALJ Timothy Wing on April 22, 2013, at which Plaintiff was represented by an attorney.  Plaintiff and her daughter, Dana Kubiak, testified.  (R. 286-87.)

Plaintiff testified that she had increased access to the

4

account when her father became ill in 2009 and that she used the Trust only to pay an occasional doctor's bill and three regular bills: telephone, electric and insurance.  (R. 19, 297, 310-11.) She stated that otherwise, she "never used the Trust to pay for anything else" but acknowledged that there was a debit card for the account.  (R. 307, 309-13.)  The ALJ questioned Plaintiff about bank statement transactions indicating the Trust had been used for other purposes.  (*See*, *e.g.*, R. 319.)  For the most part, Plaintiff provided vague responses to the ALJ's inquiries about unauthorized or questionable expenditures.

Plaintiff also testified that when her daughter became trustee, she used the Trust to pay the three bills identified and Plaintiff did not have direct access to the Trust account.  Trustee Dana Kubiak testified similarly.

At the hearing, Plaintiff's attorney brought up the issue of cessation--arguing that going forward Plaintiff should not be denied benefits due to a finding that the Trust temporarily operated outside the permitted parameters.  (R. 297, 345.)  He argued that benefits should be reinstated either from the time of notification of a problem in April 2011 when the debit card was destroyed or, at the latest, when Dana Kubiak became trustee in September 2012, because, even if the Trust was improperly used before, the operation of the Trust came into compliance with the requirements of a special needs trust and was therefore excludable

5

income as of those dates.  (R. 345.)

**C.   *ALJ Decision***

ALJ Wing rendered his decision on April 25, 2013.  (R. 23.)
He identified the two issues before him as follows: 1) "Whether the
trust disbursement made from a document, entitled Special Needs
Trust is a countable resource, which could result in an overpayment
to the claimant"; and 2) "If an overpayment has occurred, whether
claimant was with or without fault in determining whether waiver of
an overpayment should be allowed."  (R. 15.)  Regarding the second
issue, the ALJ noted that waiver of adjustment or recovery of an
overpayment of Title XVI benefits may be granted when the claimant
was without fault, "and adjustment or recovery . . . would defeat
the purpose of Title XVI, be against equity and good conscience, or
impede efficient or effective administration of the Title XVI due
to the small amount involved."  (R. 17 (citing 20 C.F.R. §§
416.550, 416.551).)

ALJ Wing determined that the Trust did not meet the
requirements of a special needs trust because the evidence
established that Plaintiff directly accessed the Trust which showed
that the Trust was a countable resource pursuant to the guidance
provided in SSA's Program Operations Manual System ("POMS") SI
01120.200.  (R. 11-22.)  After noting that POMS SI 01120.200
directs that "if the individual can direct use of the trust
principle for her support or maintenance, the trust principle is a

resource for SSI purposes," the ALJ found that "[t]he evidence of record indicates that not only did claimant direct the use of the trust principle and have access to the funds, the disbursements made were for expenses which were not consistent with the purpose, intent and terms of the trust."  (R. 19.)

In turn ALJ Wing concluded that, with the Trust counted as a resource, Plaintiff did not meet the income requirements for receiving SSI.  (R. 15-22.)  He also concluded that Plaintiff was not without fault in causing the overpayment. (R. 22-23.)

Regarding the issue of the propriety of cessation, ALJ Wing stated that the authority he relied upon "indicates that having access to and direction of use of the funds results in the trust principle being considered a resource for SSI purposes."  (R. 21.) He therefore found

> no merit to or authority for the claimant's position that if the trust payments are considered countable income, it is income only during the months she used the debit card to access money, and that eligibility should be reinstated once she did not have direct access to the money.  That is, claimant claims there should only be a temporary cessation of benefits until the debit card she used to access funds was destroyed.

(*Id.*)

In sum, the ALJ determined that Plaintiff was not eligible for SSI benefits after January 2009 and that she owed the overpayment of $18,137.  (R. 15-23.)

7

## II. Discussion

### A.    *Standard of Review*

Although this case differs from the normal appeal of the denial of benefits, the parties do not dispute that the substantial evidence standard applies here.  (Doc. 11 at 6; Doc. 12 at 2.) Thus, this Court's review of the Acting Commissioner's decision in this matter is limited to determining whether there is substantial evidence to support the decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B.    *Plaintiff's Alleged Errors*

Plaintiff identifies the following errors: 1) the ALJ "improvidently decided" that the Trust was not a proper "special needs trust"; 2) the ALJ "improvidently decided" that the Trust was not exempt and therefore not excludable as a resource even though the corpus or principal never exceeded $2,000; 3) the misuse of the Trust should only be considered for the duration of the initial administration and not after the change in administration; and 4) the record does not contain any reviewable decision on "cessation" of SSI benefits beyond April 25, 2013, and there is no substantial proof that Plaintiff's medical condition changed, that the Trust

8

itself was improper, or that any misuse of the Trust continued
beyond the date of the substitution of trustee in September 2012.
(Doc. 11 at 5.)

Plaintiff provides the following explanation of a special
needs trust:

> In 1993, Congress established a general
> rule that trusts would be counted as assets
> for the purpose of determining Medicaid
> eligibility.  Consolidated Omnibus Budget
> Reconciliation Act of 1993, Pub. L. No. 103-
> 66, title XII § 1361 (d)(1)(C), 107 Stat. 312
> (Aug. 10, 1993).  However, Congress excepted
> from that rule three types of trusts meeting
> certain requirements.  Taken together, these
> are generally called "special needs trust" or
> "supplemental needs trust."  "A supplemental
> needs trust is a discretionary trust
> established for the benefit of a person with
> severe and chronic or persistent disability
> and is intended to provide for expenses that
> assistance programs such as Medicaid do not
> cover."  *Sullivan v. Cnty. of Suffolk*, 174
> F.3d 282, 284 (2d Cir. 1999) (internal
> quotation mark omitted).  These expenses,
> such as books, television, internet, travel,
> and even such necessities as clothing and
> toiletries, "would rarely be considered
> extravagant."  *Lewis v. Alexander*, 68 F.3d
> 325 (3rd Cir. 2012).

(Doc. 11 at 6-7.)

As a general matter, SSI is a program based on financial need,
the underlying purpose "is to assure a minimum level of income for
people who are age 65 or older, or who are blind or disabled and
who do not have sufficient income or resources to maintain a
standard of living at the established Federal minimal level."  20
C.F.R. § 416.110.  Pursuant to 42 U.S.C. § 1382(a)(3)(B), if such a

9

person is unmarried and her countable income exceeds $2,000, she loses eligibility for SSI benefits.  The monthly SSI rate is reduced by the amount of an individual's countable income.  20 C.F.R. §§ 416.410, 416.420; *see also* 20 C.F.R. § 416.1100.

A trust is generally counted as a resource for SSI benefits, with any additions to the trust in a given month being counted as income for that month.  42 U.S.C. § 1382b(e); 20 C.F.R. § 416.1208 *et seq.*; Program Operations Manual System ("POMS") SI 01120.201(A)(1), (B)(1).[1]  An exception to this rule is where an irrevocable special needs trust meeting certain criteria has been created.  42 U.S.C. § 1396p(d)(4)(A), (C); POMS SI 01120.203.   42 U.S.C. § 1396p(d)(4)(A) provides that a trust is not countable income for SSI benefits purposes if it is a "trust containing the assets of an individual under age 65 who is disabled . . . and which is established for the benefit of such individual by a parent, grandparent, legal guardian, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to the total of medical assistance paid on behalf of the individual."  *See also* POMS SI 01120.203.[2]  However, pursuant to POMS SI 1120.200(D)(1)(a), if an individual can direct the use of the trust principal for support and maintenance, the trust

---

[1]   *See* http://policy.ssa.gov/poms.nsf/lnx/0501120201

[2]   *See* http://policy.ssa.gov/poms.nsf/lnx/0501120203

principal is a resource for SSI purposes.[3]

## 1.   **Special Needs Trust Decision**

Plaintiff first argues the ALJ "improvidently decided" that the Trust was not a proper "special needs trust."  (Doc. 11 at 5.) We conclude the ALJ's decision was appropriate in part.

Plaintiff summarizes the ALJ's finding on the issue of whether it was a countable resource:

> The ALJ analyzed the Trust and found that the access and directing of funds for a limited time "negate[d] the irrevocable special needs trust as an excludable countable resource." (Tr. 21).  The ALJ concluded that creating a special needs trust and funding it does not conclusively establish that it is excluded as a "countable resource."  The ALJ reasoned that a properly created special needs trust which is an excludable resource under 42 U.S.C.A. § 1396(d)(4)(A) is transformed by acts of administration not only during the commission of the acts, but even after the administrative operation changes.  (Tr. 21). The ALJ found that purchases made with the trust money were not consistent with trust purposes and did not "increase [Claimant's] quality of life."  (Tr. 21).

(Doc. 11 at 8-9.)

The ALJ relied on POMS SI 01120.203 and SI 01120.200. Plaintiff criticizes the ALJ's reliance because these provisions "do not have the force of law.  It is only a means for the Commissioner to issue Social Security policy and operating

---

[3]   *See* http://policy.ssa.gov/poms.nsf/lnx/0501120200

instructions.  *See Edelman v. Commissioner*, 83 F.3rd 68 (3rd Cir. 1996).  *See also Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)." Plaintiff acknowledges that the instructions at issue "indicate that if the individual can direct the principal for her support and maintenance, the trust principal is a resource for SSI purposes." (Doc. 11 at 9.)

The United States Supreme Court made note of the deference due POMS in *Washington State Dep't of Social and Health Services v. Guardianship Estate of Danny Keffeler*, 537 U.S. 37 (2006): "While these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect."  *Id.* at 385-86; *see also Kelly v. Commissioner of Social Security*, 566 F.3d 347, 350 n.7 (3d Cir. 2009).   We apply this standard here.

Plaintiff cites no authority addressing facts similar to this case or the impropriety of the ALJ's reliance on the provisions cited by the ALJ.  Her reliance on the DPW letter for support is misplaced in that determinations of other agencies are not binding on Social Security administration matters.  While the ALJ's adherence to agency policy instructions in the factual context presented here may be seen as evidence "a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 401, the precise wording of POMS SI 01120.200 gives us pause. POMS SI 01120.200, the main provision relied upon by the ALJ, provides in pertinent part:

> If an individual (claimant, recipient, or
> deemor) has *legal authority* to revoke or
> terminate the trust and then use the funds to
> meet his food or shelter needs, or if the
> individual can direct the use of the trust
> principal for his or her support and
> maintenance *under the terms of the trust*, the
> trust principal is a resource for SSI
> purposes.

POMS SI 01120.200(D)(1)(a) (emphasis added).

Here the Trust does not give Plaintiff the legal authority to revoke or terminate the trust, nor do the terms of the trust allow her to direct the use of the trust principal. (*See* R. 100-05.) Rather, Trustee Aglae Elias and Plaintiff acted contrary to the terms of the Trust. Therefore, this situation does not precisely fit those addressed in POMS SI 01120.200(D)(1)(a).

Despite this distinction, we have no hesitation in concluding that substantial evidence supports ALJ Wing's determination that during the period January 1, 2009, to April 1, 2011, the misuse of the Trust rendered it a countable resource. The period thereafter will be discussed below.

**2.   Principal Amount of Trust**

Plaintiff's second claimed error is that the ALJ "improvidently decided" that the Trust was not exempt and therefore was not excludable as a resource even though the corpus or principal never exceeded $2,000. (Doc. 11 at 5.) We conclude Plaintiff has not shown the ALJ erred on this basis.

As noted above, if countable income exceeds $2,000, a claimant

13

loses eligibility for SSI benefits.  More importantly here, the monthly SSI rate is reduced by the amount of an individual's countable income.  20 C.F.R. §§ 416.410, 416.420; *see also* 20 C.F.R. § 416.1100.

Plaintiff asserts that there is no testimony or evidence of record to support the conclusion that the principal balance exceeded the $2,000 limit.  (Doc. 11 at 11.)

Defendant sets out in detail the accounting which resulted in the loss of Plaintiff's SSI benefits showing that Plaintiff's countable income exceeded the monthly SSI payment.  (Doc. 12 at 15 & n.4, 18-21 & n.7.)  Plaintiff does not dispute this accounting in her reply brief.  (*See* Doc. 13.)  As Defendant's accounting is undisputed and appears to be consistent with relevant regulatory provisions, we conclude Plaintiff has not shown the ALJ erred on the basis asserted.

3.  **Temporary Misuse of Trust**

Plaintiff next argues that the misuse of the Trust should only be considered for the duration of the initial administration of the Trust.  (Doc. 11 at 5.)  We conclude this issue warrants remand for further consideration.

As noted above, the ALJ relied on POMS SI 01120.200(D)(1)(a) to conclude that the Trust was a countable resource.  He also relied on it in determining that a temporary cessation of benefits was not appropriate and the Special Needs Trust was permanently

negated by the misuse.  (R. 21.)   In his discussion, the ALJ
addressed only the period of time until the debit card was
destroyed (about April 2011).  (*Id.*)  He does not address the
period of time after Dana Kubiak became Trustee in September 2012--
a period about which he found Ms. Kubiak's testimony credible
regarding her actions in carrying out her duties as trustee.  (R.
20.)  Because POMS SI 01120.200(D)(1)(a) does not precisely address
the situation presented here and because the ALJ did not discuss
the period of time during which the Trust may have been properly
administered, we conclude the purposes of the Act are best served
by remand for further consideration of this issue.

     In making this determination, we have considered Defendant's
argument that Plaintiff's position is "essentially . . . that a
trust may be both a special needs trust and not be a special needs
trust."  (Doc. 12 at 17.)  We make no such finding.  However, we do
conclude that the ALJ has not adequately discussed the issue of
whether temporary misuse and improper administration of a properly
formed Special Needs Trust must forever negate consideration of the
trust as an excludable resource if the administrative problems and
misuse are rectified.

**4.   Cessation of Benefits**

     Plaintiff's final asserted error is that the record does not
contain any reviewable decision on "cessation" of SSI benefits
beyond April 25, 2013, and there is no substantial proof that
Plaintiff's medical condition changed, that the Trust itself was

improper, or that any misuse of the Trust continued beyond the date of the substitution of trustee in September 2012.  (Doc. 11 at 5.) This issue is closely related to whether the misuse of the trust can be considered temporary.  Because we have remanded for further consideration of that issue, which is to include consideration of the period beyond September 2012, further discussion of the cessation of benefits is not necessary.

### III. Conclusion

   For the reasons discussed above, we conclude remand is warranted for further consideration and Plaintiff's appeal is granted to the extent she seeks such reconsideration.  An appropriate Order is filed simultaneously with this Memorandum.


                                         S/Richard P. Conaboy
                                         RICHARD P. CONABOY
                                         United States District Judge
DATED: July 27, 2015

16